UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

SILVERIO DUARTE,
Petitioner,
v.
MARKWAYNE MULLIN, et al.,
Respondents.

Case No. 5:26-cv-04999-PD

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING RELEASE**

**A# 221-462-920**

Silverio Duarte ("Petitioner") filed a counseled, verified Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. Dkt. No. 1. The Court has considered the Petition, Respondents' answer and exhibits, and Petitioner's reply. Dkt. Nos. 1, 8, 11.

## I. Background

Petitioner is a 45-year-old native and citizen of Guatemala. Dkt. No. 1, Petition ¶ 21. He has resided in the United States since 2015. *Id.* Prior to his detention, he worked in construction. *Id.* He has a disability and has limited use of his hands due to a vehicular accident. *Id.* Prior to his arrest, Petitioner resided in Riverside, California, with his spouse and four children. *Id.* ¶ 22.

On the morning of August 22, 2026, Petitioner was in a truck carpooling with co-workers to a job site. *Id.* ¶ 23. Petitioner was in the front passenger seat. *Id.* He and his coworkers noticed that a couple of unmarked vehicles seemed to be following them. *Id.* Petitioner and his coworkers stopped to get coffee. *Id.* ¶ 24. When they returned to the truck and resumed their route to work, the vehicles continued following them for a brief time, then one pulled in front of them and the other blocked them from behind. *Id.* Petitioner was not driving, feared for his safety, and left the scene on foot. *Id.* Two masked men ran after him, not identifying themselves. *Id.* They tackled him and beat him, repeatedly hitting him in the ribs. *Id.* They then forced him onto his stomach, held his hands behind his back, and continued beating him. *Id.* Petitioner pleaded with them to stop. *Id.*

Petitioner states that the agents did not present a warrant for his arrest. *Id.* ¶ 25. The agents pulled him up and handcuffed him and placed him in the back of a black unmarked pickup truck. *Id.* ¶ 26. They took him to the parking lot of a storage facility, took his picture, and asked for his identification. *Id.* He did not have identification because it was in his coworker's vehicle. *Id.* They asked him if he had any criminal history and he informed them that he did not. *Id.*

Petitioner was then taken to an office building which was not identifiable as a government office. *Id.* ¶ 27. He remained in the pickup truck while agents from approximately five other vehicles gathered. *Id.* After a few minutes he was transported to an ICE field office. *Id.* At this office, approximately five ICE agents were gathered and were playing an audio recording and laughing together. *Id.* ¶ 28. Petitioner could tell that they were listening to a recording of his beating because he recognized his own voice begging the ICE agents to stop. *Id.*

According to Petitioner, he was provided with no process or opportunity to be heard prior to his detention, and there is no indication that Respondents considered any evidence regarding his flight risk or danger to the community before they detained him.[1] *Id.* ¶¶ 50-51.

## II. Discussion

The Petition raises six claims: (1) Violation of the Immigration and Nationality Act ("INA"); (2) Violation of the Administrative Procedures Act ("APA"); (3) Violation of the INA and implementing regulations requiring a warrant for arrest; (4) Petitioner's warrantless arrest and seizure violated the Fourth Amendment; (5) Violation of the Fifth Amendment right to procedural due process; and (6) Violation of the Fifth Amendment right to substantive due process. Dkt. No. 1 at 14-17.

Along with their Answer, Respondents submitted the Form I-213, which states that on August 22, 2026, an Enforcement and Removal Operations ("ERO") team conducted a targeted enforcement operation to locate an individual – not Petitioner – for whom an arrest warrant had been issued. Dkt. No. 8-1 at 2. The driver of the truck matched the description of that individual, and a vehicle stop was conducted.[2] *Id.* at 2-3. The truck failed to yield and pulled into a shopping center; two unknown subjects got out of the truck and ran. *Id.* at 3. One of those subjects – Petitioner – refused to put his hands behind his back, was taken to the ground, and continued to resist. *Id.* Petitioner was subsequently arrested. *Id.* at 3. The Form I-213 also states that Petitioner has no criminal history. *Id.*

---

[1] Petitioner has a hearing scheduled on December 8, 2026. *See* https://acis.eoir.justice.gov/en/ (last visited November 17, 2026).

[2] The Form I-213 states that the officers' body-worn cameras were activated.

In the Answer, Respondents state that Petitioner was detained pursuant to an arrest warrant and served with a Notice to Appear. Dkt. Nos. 8 at 2; 8-1; 8-3. The warrant is dated August 22, 2026, and its Certificate of Service states that it was served on Petitioner at August 22, 2026 at the ICE Field Office. Dkt. No. 8-2. The Notice states that Petitioner is inadmissible and thus subject to removal under 8 U.S.C. § 1182(a)(6)(A)(i) (A noncitizen "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."). The Certificate of Service states that the Notice was personally served on Petitioner on August 22, 2026, and he refused to sign. Dkt. No. 8-3.

Respondents argue that Petitioner was never previously detained and his only potential available remedy is a bond hearing under § 1226(a), pursuant to *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026). Respondents further argue that to the extent Petitioner has not requested a bond hearing, he has not exhausted his administrative remedies.

In his Traverse, Petitioner argues that Respondents concede by failing to respond to his arguments that his due process rights were violated due to Respondents' failure to properly make an assessment of Petitioner's flight risk and danger to the community prior to his detention; that his substantive due process rights were violated; that Respondents failed to produce any evidence that they followed the procedures at 8 C.F.R. § 236.1(c) or provide a notice of custody determination under 8 C.F.R. § 236.1(g)(1) or submit Form I-286; and his Fourth Amendment claim. Dkt. No. 11.

**A. Detention Under 8 U.S.C. § 1226(a)**

Section 1226(a) "sets out the general rule" for the arrest, detention, and release of noncitizens present in this country who are believed to be subject to removal. *Nielsen v. Preap*, 586 U.S. 392, 396–97 (2019). Under Section

1226(a) and its implementing regulations, a DHS officer may arrest and take into custody a noncitizen "under the authority of Form I–200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b). The Government "may" detain such individuals "pending a decision on whether the [noncitizen] alien is to be removed from the United States." 8 U.S.C. § 1226(a).

Regardless of whether the individual is arrested pursuant to a warrant or DHS's warrantless arrest authority, DHS officers conduct an initial custody determination to decide whether to release or detain the person. 8 C.F.R. § 1236.1(c)(8). Unless the person is subject to mandatory detention under 8 U.S.C. § 1226(c) based on their criminal history, DHS has "the discretion either to detain the [noncitizen] or to release him on bond or parole." *Nielsen*, 586 U.S. at 396. The DHS officer must release the noncitizen if they "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

After the initial custody determination, the noncitizen may request that an Immigration Judge ("IJ") review the DHS officer's determination at a bond hearing in immigration court. *See* 8 C.F.R. § 1236.1(d)(1) (permitting a noncitizen to request amelioration of the conditions of release in front of any immigration judge "*after an initial custody determination*") (emphasis added); 8 C.F.R. § 1003.19 ("Custody and bond determinations made by the service pursuant to 8 CFR part 1236 may be reviewed by an Immigration Judge pursuant to 8 CFR part 1236.")[3]

---

[3] DHS utilizes a Notice of Initial Custody Determination, Form I-286, to document its custody determinations. *See* 8 C.F.R. § 236.1(g). The Form I-286 includes "the formal mechanism—a box the detainee may check—to immediately request" that an Immigration Judge ("IJ") review DHS's custody determination at a custody redetermination hearing (i.e., a bond hearing). If the noncitizen checks this box, or otherwise requests a custody redetermination hearing, an IJ will set a hearing in

"If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). The noncitizen can "appeal an adverse decision to the BIA." *Id.* (citing 8 C.F.R. § 236.1(d)(3)). Alternatively, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." *Id.* (citing 8 C.F.R. § 1003.19(e)). "The same procedures apply to this new hearing, and its outcome is also appealable to the BIA." *Id.* The noncitizen may also seek judicial review of the immigration courts' bond determination through a habeas petition challenging the determination as constitutionally deficient, legally erroneous, or an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024).

Reviewing this statutory and regulatory framework, the Ninth Circuit has observed that "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz*, 53 F.4th at 1202.

---

Immigration Court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19; *Garcia-Maya v. Blanche*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *8 (D. Nev. July 7, 2026).

### B. The Constitutional Grounding for § 1226(a) Procedures

The Supreme Court has long recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. *Id.* at 690–92. In the context of immigration detention, "it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (cleaned up). *See also Padilla v. United States Immigr. & Customs Enf't,* 192 F.4th 894, 914 (9th Cir. 2026) (recognizing that "the principle that the government cannot arbitrarily detain people, including noncitizens, has been a central tenet of British and American legal traditions since the thirteenth century" and discussing the history of protections against arbitrary detention applied to noncitizens).

Section 1226(a) and its implementing regulations establish procedures to ensure that the Government only detains noncitizens where doing so advances its legitimate interests in preventing danger and mitigating risk of flight. Without such protections, there is an unacceptably high risk that the noncitizen's confinement is not "reasonably related" to a legitimate purpose. *Zadvydas*, 533 U.S. at 690; *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1085 (N.D. Cal. 2025) ("Noncitizens subject to § 1226(a) therefore have a statutory as well as constitutional interest in remaining out of custody unless they pose a threat to the public or a flight risk.").

The mechanism for making such evaluations is the initial custody review, which ensures that DHS only detains a noncitizen where officers determine that detention is justified on an individualized basis and engages "in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Kelly v. Almodovar*, No. 25-cv-6448-AT, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025) (quotations omitted). It also "create[s] a record that permits meaningful review of whether the required procedure occurred." *Dos Reis v. McShane*, No. 26-cv-3775, 2026 WL 1746649, at *5 (E.D. Pa. June 17, 2026) ("A contemporaneous, individualized custody determination [ ] require[s] ICE to explain why detention, rather than release on conditions, is necessary for *this* Petitioner.") (emphasis in original). And it is the "mechanism" by which noncitizens are advised that they can seek review before an IJ and provided an opportunity to request such review by checking a box on the Form I-286. *See Garcia-Maya*, 2026 WL 1965886, at *8.

Absent an initial custody review, a noncitizen may not be aware that they are eligible for a bond hearing or know how to request one. *See Castellanos Franco v. Warden, Adelanto ICE Processing Ctr.*, et al., No. 5:26-cv-05549-MWC-DMK, 2026 WL 2922670, at *4–5 (C.D. Cal. Sept. 29, 2026) ("Respondents' 'failure to provide petitioner with any of § 1226(a)'s 'substantial procedural protections,' . . . including the right to request an initial custody re-determination before an IJ under 8 C.F.R. § 1236.1(d), violated procedural due process.' ") (quoting *Rivas Garcia v. Current or Acting Field Dir.*, No. 1:26-cv-03245-DAD-SCR, 2026 WL 1265937, at *4 (E.D. Cal. May 8, 2026)). And even when a noncitizen requests a bond hearing before an IJ, it may be weeks or months until the hearing is scheduled. *See generally Trujillo-Hernandez v. Mullin, et al.*, No. 5:26-cv-03282-SP, 2026 WL 2826326, at *5 (C.D. Cal. Sept. 21, 2026).

In short, without an initial custody determination, a person could be confined for a prolonged period without any determination that such a profound deprivation of their liberty is actually justified.

Considering the importance of the procedures available under Section 1226(a) at the outset of an individual's detention, numerous courts have recognized failure to provide an initial custody determination is not only a statutory violation, but also a violation of a noncitizen's due process rights. *Lopez Esteban v. Warden-Facility Adm'r of Nw. Processing Ctr.*, No. 2:26-cv-02548-JHC, 2026 WL 2686824, at *4 (W.D. Wash. Sept. 14, 2026) (quoting *Pastrana-Beltran v. Mullin*, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) and collecting cases). *See also Occeus v. Warden, California City Detention Facility*, No. 1:26-cv-07057-TLN-SCR, 2026 WL 2858725, at *1 (E.D. Cal. Sept. 23, 2026) ("Petitioner was denied statutory and regulatory protections under § 1226(a) and 8 C.F.R. § 1236.1(d) for a period of months in this case, which constitutes a separate procedural due process violation."); *Angulo-Barbosa v. Blanche, et al.*, No. 2:26-cv-02102-RFB-BNW, 2026 WL 2676815, at *2 (D. Nev. Sept. 11, 2026) ("the Court finds Petitioner's detention without notice of an initial custody determination violates Petitioner's right to substantive and procedural due process"); *Rodriguez v. Knight*, No. 1:26-cv-00505-BLW, 2026 WL 2641448, at *3 (D. Idaho Sept. 8, 2026) ("the Government violated his due process rights by denying him the individualized custody determination required under § 1226(a)"); *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026); *J.T.G. v. Genalo*, No. 26-cv-4521-AT, 2026 WL 1724325, at *4 (S.D.N.Y. June 15, 2026); *Curimilma Quille v. Blanche*, No. 26-cv-2818-HG, 2026 WL 1453889, at *4 (E.D.N.Y. May 22, 2026).

**C. Respondents' Failure to Provide Initial Custody Review**

Petitioner alleges, and Respondents do not dispute, that when Petitioner was taken into custody, there was no initial finding that he was a flight risk or a danger. Petitioner was provided no process or opportunity to be heard prior to his detention. Petition ¶¶ 4, 50-51; Dkt. No. 11, Traverse at 2-5. Respondents proffer no evidence or argument that Petitioner received an individualized custody determination, and they did not submit a Notice of Initial Custody Determination, Form I-286. The Court therefore concludes that ICE failed to provide Petitioner with an initial custody determination at the outset of detention.

**D. Remedy**

The Court must determine, then, the proper remedy for the failure to provide the initial custody determination. Respondents argue that Petitioner "appears to be entitled to request and receive an initial bond hearing" pursuant to *Rodriguez Vazquez*. Dkt. No 8 at 2. However, as many of the courts to address this issue have concluded, the "failure to comply with the procedures set forth by 8 U.S.C. § 1226(a) and its implementing regulations during a petitioner's initial detention renders that detention unlawful and that unlawfulness cannot be cured through belated compliance with statutory requirements." *Zurita Navarro*, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026); *J.T.G.,* 2026 WL 1724325, at *4 ("Because J.T.G.'s detention was unlawful from the outset, the government cannot cure its procedural failures by providing a custody determination three weeks later."). *See also Lopez Esteban*, 2026 WL 2686824, at *4 (collecting cases). "The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends

the ordered system of liberty that is the pillar of the Fifth Amendment." *Gonzalez v. Joyce*, No. 25-cv-8250-AT, 2025 WL 2961626, at *5 (S.D.N.Y. Oct. 19, 2025).

Petitioner has now been confined since August without any determination that this lengthy detention is warranted. A bond hearing belatedly conducted at some point in the future is "'no substitute'" for initial custody determination that would have established "a lawful basis for detention in the first instance." *Garcia-Maya*, 2026 WL 1965886, at *8 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)).

Because Petitioner did not receive an initial custody review, the Court concludes that the "most appropriate remedy for this violation would be to return Petitioner to the previous status quo by releasing him from detention." *Reyes v. Santacruz, Jr., et al.*, No. 26-cv-3394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026). The Ninth Circuit has recognized that "the purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). This principle has particular force where, as here, the protections at issue are intended to prevent an unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

## III. Order

For the foregoing reasons, the Petition is GRANTED as to Count Five, and the remaining counts are dismissed without prejudice.

Petitioner Silverio Duarte (A# 221-462-920) is **ordered released** within 24 hours of this Order.

This Order does not provide Petitioner with blanket immunity from future detention – that relief is likely beyond the Court's jurisdiction – but any future enforcement actions after release must comply with Due Process requirements.

At the time of release, Respondents are ordered to return to Petitioner any of Petitioner's personal belongings that were seized from him, including all identification, work authorization, or other official documents.

**Respondents are further ordered** to file, within three days of Petitioner's release, a status report confirming Petitioner's release.

IT IS SO ORDERED.

DATED: November 18, 2026

Patricia Donahue
United States Magistrate Judge